**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(MILWAUKEE DIVISION)**

| | | |
|---|---|---|
| JOHN REICHARDT, CAROL REICHARDT, and LISA MELBY on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 17-CV-219 |
| | ) | |
| ELECTROLUX HOME PRODUCTS, INC., | ) | |
| | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| | ) | **(Product Liability)** |
| Defendant. | ) | **DEMAND FOR JURY TRIAL** |
| _____ | ) | |

## CLASS ACTION COMPLAINT

John Reichardt, Carol Reichardt, and Lisa Melby ("Plaintiffs") individually and on behalf of all others similarly situated, bring this action against Electrolux Home Products, Inc. ("Electrolux" or "Defendant"). The following allegations are based upon personal knowledge as to Plaintiffs' own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

## INTRODUCTION

1. Plaintiffs represent a proposed class of thousands of consumers who owned and used residential electrical and gas oven ranges designed and manufactured by Defendant Electrolux Home Products, Inc. and sold under the Electrolux, Frigidaire, and Kenmore brand names (the "Class Ranges"). These ranges are dangerous due to electrical system defects that

can affect all of the ovens' features and poses serious fire hazards. Specifically, the ranges are fitted with defective control boards, including, but not limited to, defective wiring. [1]

2. The seriousness of the health and safety hazards these defects pose is exemplified by Plaintiffs' experiences where, in both cases, fires resulting from the defects could have been catastrophic: their houses could have burned down and they could have been injured or killed. Other consumers' experiences are equally alarming and illustrate the degree to which the ranges pose an unreasonable safety hazard.

3. Electrolux has known of these dangerous defects for years; however, to date, it has failed to recall the defective product or to inform or the public that its ranges are defective and pose a serious safety risk. The number of reports of consumers' failed Electrolux oven control panels and fires just from the U.S. Consumer Products and Safety Commission and the Consumer Affairs websites is extensive. *See* (1) www.saferproducts.gov. and this website was last visited on January 13, 2017;

(2)https://www.consumeraffairs.com/homeowners/frigidaire_range.html and this website was last visited on December 29, 2016; and

(3)https://www.consumeraffairs.com/homeowners/kenmore_ovens.html and this website was last visited on January 11, 2017.[2]

4. Electrolux's conduct violates well-established contract, tort, and consumer protection laws of Wisconsin, Maryland, and of other states.

5. Plaintiffs John and Carol Reichardt and Lisa Melby bring this suit on behalf of themselves and other similarly-situated consumers. They seek damages and appropriate

---

[1] The terms "control board", "oven control board", and "relay control board" are used interchangeably herein.
[2] Exhibits 1, 2, and 3 to this Complaint contain representative samples of consumer reports from these websites and regarding control board failures and fires in Electrolux ovens.

equitable relief, including an order enjoining Electrolux from selling these ranges without disclosing the defect to consumers.

## PARTIES

6.  Plaintiffs John Reichardt and wife Carol Reichardt are citizens and residents of West Bend, Washington County, Wisconsin.

7.  Plaintiff Lisa Melby is a citizen and resident of Edgewater, Anne Arundel County, Maryland.

8.  Defendant Electrolux Home Products, Inc. is a Delaware corporation that maintains its principal place of business at 10200 David Taylor Drive, Charlotte, Mecklenburg County, North Carolina 29262.

## JURISDICTION AND VENUE

9.  This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Electrolux, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, (c) the proposed class consists of more than 100 members, and (d) none of the exceptions under the subsection apply to this action.

10.  This Court has jurisdiction over Electrolux because it is registered to conduct business in Wisconsin, has sufficient minimum contacts in Wisconsin, and otherwise intentionally avails itself of the markets within Wisconsin through the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

3

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Electrolux conducts substantial business in this District and a substantial part of the Reichardt Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

12.     Electrolux is the world's second-largest appliance maker by units sold.  It sells under a variety of brand names including its popular Frigidaire and Kenmore brands.

13.     The oven control board in Electrolux's ovens controls the main function of the electric and gas oven ranges, including heat and temperature controls.  Because of inherent design and manufacturing flaws (the "Defects") known to Electrolux, its Frigidaire and Kenmore ovens' control boards are defective and prone to catch fire.

14.     On August 27, 2009, Electrolux instituted a recall of certain Frigidaire and Kenmore Elite Smoothtop Electric ranges with rotary knobs and digital displays and sold by national retailers from June 2001 through August 2009 which affected about 200,000 units. This recall also involved a serious electrical defect. According to the Consumer Products Safety Commission: "Depending on the model, the surface heating elements can: 1) turn on spontaneously without being switched on; 2) fail to turn off after being switched off; or 3) heat to different temperatures than selected."  Details of the recall, including the affected serial and model numbers, can be found at https://www.cpsc.gov/Recalls/2009/Frigidiare-and-Kenmore-Smoothtop-Electric-Ranges-Recalled-Due-to-Fire-Hazard; this website was last visited on December 31, 2016. While these recalled ranges are excluded from the instant proposed classes, the defect issues bear resemblance to Plaintiffs' and putative class members' oven defects.

15.     The Reichardt Plaintiffs' oven range lasted only four years until it caught fire, and the Melby range lasted just one year.  The National Association of Home Builders reported in a

2007 study, conducted with Bank of America Home Equity, that the life expectancy of an electric range is thirteen years and that of a gas range is fifteen years. In the Appliance Market Research Report from June 2011 entitled "U.S. Appliance Industry: Market Value, Life Expectancy & Replacement Picture 2011," the UBM Canon Company—a global provider of media and information services for the manufacturing industries—concludes that the low to high life expectancy of electric ranges is 12-19 years and for gas ranges, the life expectancy is 14-22 years.

## ELECTROLUX'S NOTICE OF THE DEFECTS

16.     Exhibit 1 to this Complaint contains a representative sample of consumer complaints submitted to the U.S. Consumer Product and Safety Commission ("CPSC") regarding control board failure and fires in Electrolux's Frigidaire and Kenmore oven ranges.[3]

17.     Exhibit 2 to this Complaint contains a representative sample of consumer complaints (as submitted, uncorrected for grammar/spelling/punctuation) posted on the Consumer Affairs' website regarding Electrolux's Frigidaire electric oven ranges and oven control board failures and fires. *See* "Top 327 Complaints and Reviews about Frigidaire Electric Ranges": https://www.consumeraffairs.com/homeowners/frigidaire_range.html; website last visited on December 29, 2016.

18.     Exhibit 3 to this Complaint contains a representative sample of consumer complaints (as submitted, uncorrected for grammar/spelling/punctuation) posted on the Consumer Affairs' website regarding Electrolux's Kenmore oven ranges and oven control board

---

[3] In Exhibit 1, the table that accompanies each incident report was compiled by counsel with information from the website reports. The details of each incident are copied verbatim from the CPSC website. These reports were last accessed from the CPSC website www.saferproducts.gov on January 13, 2017.

5

failures and fires.  *See* "Top 388 Complaints and Reviews about Kenmore Ovens":

https://www.consumeraffairs.com/homeowners/kenmore_ovens.html; website last visited on

January 11, 2013.

19.     Before placing its ovens into the stream of commerce, Electrolux had actual knowledge that the ovens contained the Defects that caused fires and created an unreasonable risk of property damage and personal injury or death.

20.     Electrolux knew of the Defects prior to sale because of its own early warning systems and statistical analyses that it employs, or should have employed, to detect problems before they can affect consumers.  The results of early warning tests and audits would have informed Electrolux—prior to sale— that its ovens were defective.

21.     In addition, Electrolux also conducts a significant amount of after-market testing that should have informed it that its ovens had a defective electrical system.  Upon information and belief, Electrolux monitors warranty statistics and service call rates in order to detect problems as soon as customers begin to experience them.  Electrolux also tracks returned products and parts to investigate product faults in an effort to reduce their warranty claims rate. Quality engineers also monitor customer complaints from Electrolux's call center and other sources to detect increases in problems.  Given that the electrical systems can fail quite rapidly, after-market testing would have also informed Electrolux that the ovens were defective.

22.     Electrolux's actions related to designing, testing, manufacturing, selling, distributing, and warranting defective oven ranges have caused Plaintiffs and the other putative Class Members to suffer property loss, financial harm, loss of use, and other damages.

**PLAINITFFS' EXPERIENCES**

**PLAINITFFS JOHN REICHARDT AND CAROL REICHARDT**

23.     On March 8, 2012, John and Carol Reinhardt, who reside in West Bend, Wisconsin, purchased a new Frigidaire electric range manufactured by Elecrtrolux—Model No. FPFEF3081KFC, Serial No. VF01451989—from Kettle Moraine Appliance & Sleep Center in West Bend.  The purchase price was $849.99. The Reichardts also purchased an extended warranty for the range which was in effect at the time of the range failure/fire at a cost of $129.00.

24.     On Sunday morning July 17, 2016, Mr. and Mrs. Reichardt, along with their four children, came home to attend church, having been away for the weekend.  Upon entering the house, the Reichardt family found that the Frigidaire range had caught fire and burned.  The fire damaged the kitchen, including the windows, cabinets, walls, small appliances, perishables, and a painting.  The smoke and soot damage extended beyond the kitchen into the entryways, stairway, living room, bathroom, and a closet in the home.  The necessary repairs, replacement, and cleaning involved the floors, walls, and ceilings, including new drywall, and paint, as well as cleaning, demolition, electrical repair, remediation of hazardous materials, treatment of the HVAC system, and water extraction and remediation.  *Report by Allstate Midwest Property Market Office:  Recap with Depreciation dated July 20, 2016; Report by Kelmann Restoration dated July 22, 2016.*

25.     Inspection of the range by Donan Inspections revealed that the fire was caused by a malfunction of the relay system causing a fire in the control panel housing near the control panel board. *Report for Allstate Insurance Company by Donan Engineering Company, Inc. dated August 19, 2016.*    The fire was spontaneous and not caused by any use or misuse of the range.

26.     Below are photographs from the Allstate Claim Record of the Reichardts' burned range/control panel, including views of the charred kitchen window.

Reichardt – Frigidaire Electric Range Damage Photograph No. 1



Reichardt - Frigidaire Electric Range Damage Photograph No. 2



<u>Reichardt - Frigidaire Electric Range Damage Photograph No. 3</u>



27.     The Reichardts would not have purchased the electric range at issue had Electrolux disclosed that the range's electrical system contained the Defects at the point of sale. The Defects caused their Frigidaire electric oven range to overheat and catch fire. Because of the Defects, they did not receive the benefit of their bargain.

28.     The Reichardts submitted their claim through their homeowners' insurance carrier, Allstate, and the insurance carrier paid for the repairs and a depreciated value for the stove. The repairs by Kelman Restoration took over one week, requiring Mr. Reichardt to be at home during that time. Without a stove, the family had to eat out several times, costing at least $500. The Reichardts received only a depreciated payment for the destroyed oven; Allstate paid $621.91, having deducted $276.40 for depreciation. The Reichardts had to buy a new oven and purchased a 2016 American Gold range for $850.00.

**PLAINTIFF LISA MELBY**

29.     On January 12, 2015, Lisa Melby, residing in Edgewater, Maryland, purchased a Kenmore gas stove Model No. 790.32603311, Serial No. AF45004220 online from www.Sears.com, on sale for $959.99, marked down from the original price of $1,599.99. Ms. Melby also purchased a three-year extended warranty costing $239.99.  Ms. Melby's Electrolux Kenmore gas range was under warranty at the time of the oven range fire.

30.     On January 16, 2016, while cooking in the oven, the electrical components in the oven cavity caught fire.  The oven could not be turned off using the controls and had to be unplugged. The fire burned the oven and kitchen cabinets and caused smoke damage to cabinets, floor, and other parts of the house.  The local fire department was called to extinguish the fire. *See* photograph below.

Melby -  Photograph of Fire Department Response - Taken on January 16, 2016



31.     Below are photographs of Ms. Melby's burned range.

Melby - Photograph No. 1 of Electrolux/Kenmore Gas Range Damage- Taken on January 16, 2016



Melby - Photograph 2 of Electrolux/Kenmore Gas Range Damage - Taken on January 16, 2016



32.     On January 20, 2016, a Sears/Kenmore technician with Sears Home Services/Chesapeake Service District came to the Melby home, inspected the oven and wrote an estimate for a control board replacement at $144.00 for labor, but no repairs were done.

33.     On February 18, 2016, a technician with Sears Home Services/Chesapeake Service District returned to the Melby home, wrote an estimate for labor to replace the oven liner and cavity for $187.00, but no repairs were done. The technician told Ms. Melby that her range was not repairable and that she needed a new range.

34.     Since the date of the fire, including during the period of the aforementioned technician visits and thereafter, Ms. Melby called Sears multiple times to ask for a replacement oven (and not with the same oven as the defective one) per her warranty. She was repeatedly sent to voicemails of Sears' employees who never called her back, and at least one employee hung up on her. When Ms. Melby was able to speak with a live representative, she was usually passed off to others who ignored her. To date, she has not received a response from Sears or anyone acting on behalf of Sears.

35.     Due to the fire, Ms. Melby has been without an oven since January 16, 2016 and her electric bills are significantly higher because she must rely upon only her toaster and microwave ovens for her cooking.

36.     Ms. Melby would not have purchased the gas range at issue had Elextrolux disclosed at the point of sale that the range's electrical system contained a defect causing it to overheat and catch fire. Because of the defect, she did not receive the benefit of her bargain.

## CLASS ACTION ALLEGATIONS

37.     Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) against Elelctrolux of their own and on behalf of the

National Class  and the Wisconsin and Maryland State classes (collectively the "Classes") as defined below.

**National Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired an Electrolux designed and/or manufactured oven range primarily for personal, family, or household purposes having the Defect and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defects.

Plaintiffs also bring this case on behalf of the State classes listed below and propose these subclasses in the interest of judicial economy and efficiency.  At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiffs may modify these classes in the future.

**Wisconsin Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of Wisconsin an Electrolux designed and/or manufactured oven range primarily for personal, family, or household purposes having the Defects and who have incurred property damage, and/or loss of use, and/or loss of the benefit of the bargain, as a result of the Defects.

**Maryland Class:**

During the fullest period allowed by law, all persons in the United States who purchased or otherwise acquired in the State of Maryland an Electrolux designed and/or manufactured oven range primarily for personal, family, or household

13

purposes having the Defects and who have incurred property damage, and/or loss of use, and/or loss of benefit of the bargain, as a result of the Defects.

"Class Ranges" include Electrolux's Frigidaire and Kenmore residential electric and gas oven ranges that contain the Defects.

38.     **Excluded from the proposed Classes are:** (a) any Judge or Magistrate presiding over this action and members of their families; (b) Electrolux and any entity in which Electrolux has a controlling interest or which has a controlling interest in Electrolux; (c) the officers and directors of Electrolux; (e) Electrolux's legal representatives, assigns, and successors; and (f) all persons who properly execute and file a timely request for exclusion from the Classes.

Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Classes.

39.     **Numerosity:** While the exact number of class members cannot yet be determined, the Classes consists at a minimum of thousands of people dispersed throughout the United States and throughout the States of Wisconsin and Maryland, such that joinder of all members (the "Class Members") is impracticable. The exact number of Class Members can readily be determined by review of information maintained by Electrolux.

40.     **Commonality**: Common questions of law and fact exist as to all members of the Classes. Among the questions of law and fact common the Classes are:

a.      Whether the oven ranges designed, manufactured, and sold by Electrolux pose a safety risk to consumers;

b.      Whether Electrolux knew, or should have known, that the Class Ranges it sold into the stream of commerce posed an unreasonable safety risk to consumers;

c.     Whether Electrolux concealed the safety risk its Class Ranges posed to consumers;

d.     Whether the safety risk the Class Ranges pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase an oven range;

e.     Whether the Class Ranges designed and manufactured by Electrolux possess any material defect;

f.     Whether the Class Ranges contain a defect presenting an unreasonable risk of oven failure, melting, burning, and fire;

g.     Whether Electrolux knew, or should have known, that the Class Ranges contained the Defects when it placed the ranges into the stream of commerce;

h.     Whether Electrolux concealed the Defects from consumers;

i.     Whether the existence of the Defects is a material fact that reasonable purchasers would have considered in deciding to purchase an oven range for in-home use;

j.     Whether the Class Ranges designed and/or manufactured by Electrolux are of merchantable quality;

k.     Whether the Class Ranges designed and manufactured by Electrolux are likely to pose a serious safety risk to consumers before the end of their reasonable expected lives;

l.     Whether the Class Ranges are likely to burn, melt, catch fire, or otherwise fail before the end of their reasonable expected life;

m.   Whether Electrolux breaches express warranties relating to the Electrolux Class Ranges by failing to recall, replace, repair, and/or correct the Defects in the ranges;

n.   Whether Electrolux breached implied warranties of merchantability relating to the Class Ranges;

o.   Whether Electrolux mispresented the characteristics, qualities, and capabilities of the Class Ranges;

p.   Whether Electrolux knew, or in the exercise of reasonable care, should have known of the Defects prior to distributing these oven ranges to Plaintiffs and Class Members;

q.   Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and Class Members material information regarding the Defects;

r.   Whether Electrolux failed to warn consumers regarding the Defects in its Class Ranges;

s.   Whether Electrolux made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of the Class Ranges in its oven range literature and on its website, including those relating to  standards, use and reliability and otherwise engaged in unfair and deceptive trade practices pertaining to the Class Ranges;

t.   Whether Electrolux was unjustly enriched as a result of selling the defective oven ranges;

16

u.      Whether Electrolux should be ordered to disgorge all or part of the profits it received from the sale of the Class Ranges;

v.      Whether Plaintiffs and Class Members are entitled to damages including compensatory, exemplary, and statutory damages, and the amount of such damages;

w.      Whether Plaintiffs and Class Members are entitled to replacement of their respective Class Range;

x.      Whether Plaintiffs and Class Members are entitled to equitable relief, including an injunction and requiring that Electrolux engage in a corrective notice campaign and/or a recall of the Class Ranges; and

y.      Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees and pre-judgment interest, post-judgment interest, and costs.

41.      **Typicality:**  Plaintiffs have substantially the same interest in this matter as all other proposed Class Members and their claims arise out of the same set of facts and conduct as all other Class Members.  Plaintiffs and all Class Members own or owned an oven range designed and/or manufactured by Electrolux with a uniform Defect that makes the oven ranges immediately dangerous upon purchase and causes them to fail within their expected useful lives and burn, melt, catch on fire, and burn areas surrounding the ranges in consumers' homes.  All of the claims of Plaintiffs and Class Members arise out of Electrolux's placement into the marketplace of oven ranges it knew were defective and caused a safety risk to consumers and from Electrolux's failure to disclose those known safety risks and defects.  Also common to Plaintiffs' and Class Members' claims is Electrolux's conduct in designing, manufacturing,

17

marketing, advertising, warranting, and/or selling the defective oven ranges, Electrolux's conduct in concealing the Defects in the oven ranges, and Plaintiffs' and Class Members' purchase of the Class Ranges.

42. **Adequacy of Representation:** Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of Class Members. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiffs have no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

43. The elements of Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the Class Members and the general public will continue to remain at an unreasonable and serious safety and property damage risk as a result of the Defects. Electrolux has acted and refused to act on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Classes as a whole.

44. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only the individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members have claims against Electrolux, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is not efficient, timely, or proper. Judicial resources would be unnecessarily depleted by prosecution of

individual claims.  Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible.  Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs.  Plaintiffs' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

**TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS**

45.     The claims alleged herein accrued upon discovery of the defective nature of the oven ranges.  Because the Defects alleged herein is hidden and Electrolux took steps to either conceal or fail to disclose the true character, nature, and quality of the Class Ranges, Plaintiffs and Class Members did not discover and could not have reasonably discovered that through reasonable and diligent investigation.

46.     Any applicable statutes of limitations have been tolled by Electrolux's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiffs and Class Members could not have reasonably discovered the true defective nature of their oven ranges until such time as the defect manifested by failing and, including, catching on fire.  As a result of Electrolux's active concealment of the Defects and/or failure to inform Plaintiffs and Class Members of the Defects, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

47.     Alternatively, the facts alleged above give rise to estoppel.  Electrolux has actively concealed the defective nature of the oven ranges.  Electrolux was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Ranges, particularly that they posed a serious risk to life and property.  At all relevant times and continuing to this day, Electrolux knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Ranges.  Given

19

Electrolux's failure to disclose this non-public information about the defective nature of the ranges—information over which it had exclusive control—and because Plaintiffs and Class Members could not reasonably have known that the Class Ranges were thereby defective, Plaintiffs and Class Members reasonably relied on Electrolux's affirmative and/or ongoing concealment. Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

Additionally, Electrolux is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),

## 15 U.S.C. § 2301, *ET SEQ*.

## (PLAINTIFF LISA MELBY INDIVIDUALLY AND ON BEHALF THE NATIONAL CLASS AND, ALTERNATIVELY, THE MARYLAND CLASS)

48.     Plaintiff Melby re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

49.     Plaintiff Lisa Melby (for purposes of this section, "Plaintiff") brings this action on behalf of herself, the National Class, and the Maryland Class.

50.     Plaintiff and other members of the Classes are "consumers" within the meaning of 15 U.S.C. § 2301(3).

51.     Electrolux is a "supplier" and "warrantor" within the meanings of 15 U.S.C. §§ 2301 (4)-(5).

20

52. Class Ranges, including the Melby range, are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

53. Electrolux provided a written warranty under 15 U.S.C. § 2301(6) to all members of the Classes under which Electrolux warranted that the Class Ranges would be free from defects in materials or workmanship for a year from the original date of purchase including to those consumers, such as Plaintiff, who purchased extended warranties—the extended warranties adding an additional three years' guarantee of non-defective materials and workmanship.

54. Electrolux guarantees the range to be free from defects and to cover repair and replacement costs for one year from date of purchase in its original warranty and for an additional three years in the extended warranty purchased by Lisa Melby.

55. Electrolux is required to repair or replace the Class Ranges that fail during the warranty periods and to pay for all damages related to the Class Range failure(s) at no charge to the consumer.

56. Plaintiff and other Class Members experienced the Defect in their Class Ranges during the period of warranty coverage.

57. Electrolux breached its warranty obligations by failing to repair and/or replace Class Members' ranges and pay for the fire damage caused by the defect at no charge to Class Members. Electrolux breached its obligations to Plaintiff and the other Class Members by failing to honor its warranty obligations.

58. Electrolux's breach of warranty deprived Plaintiff and Class Members of the benefit of their bargain.

59. The amount in controversy of the Plaintiff's individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or

value of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

60.     Electrolux has been afforded reasonable opportunity to cure its breaches of warranty.  Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff and Class Members have sent notice to Electrolux's principal place of business to provide it with reasonable opportunity to correct its business practice and cure its breaches of warranties under the MMWA.  Electrolux has not cured the breach of warranty described above and continues to deny warranty coverage when Class Members present their damages caused by the Defects.

61.     In addition, resorting to any sort of informal dispute settlement procedure or affording Electrolux another opportunity to cure its breach of warranty is unnecessary and futile.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Electrolux has repeatedly failed to disclose the Defects or provide replacement and repair costs and, as such, has indicated no desire to participate in such a process at this time.  Any requirement under the MMWA or otherwise that Plaintiff submit to any informal dispute settlement procedure or otherwise afford Electrolux a reasonable opportunity to cure its breach of warranty is excused and/or has been satisfied.

62.     As a direct and proximate result of Electrolux's warranty breach, Plaintiff and Class Members sustained damages and other losses to be determined at trial.  Electrolux's conduct damaged Plaintiff and Class Members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT II

## UNJUST ENRICHMENT

**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS AND,**

**ALTERNATIVELY, THE WISCONSIN AND MARYLAND CLASSES)**

63.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

64.     As described above, Electrolux sold Class Ranges to Plaintiffs and Class Members even though the ranges were defective and posed a safety hazard.  Electrolux failed to disclose the Defects and its attendant, and potentially deadly, risks at the point of sale or otherwise.

65.     Electrolux unjustly charges Plaintiffs and Class Members for repairs and/or replacement of the defective oven ranges without disclosing that the Defects is widespread, and repairs do not address the root cause of the Defects.

66.     As a result of its acts and omissions related to the Defects, Electrolux obtained monies that rightfully belong to Plaintiffs and Class Members.

67.     Electrolux appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members who, without knowledge of the Defects, paid a higher price for their Class Ranges than those ranges were worth.  Electrolux also received monies for those oven ranges that Plaintiffs and Class Members would not have otherwise purchased.

68.     Electrolux's retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

69.     Plaintiffs and Class Members seek restitution from Electrolux and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Electrolux from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class Member may seek restitution.

23

**BREACH OF IMPLIED WARRANTY**

**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS)**

70.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

71.     The implied warranty of merchantability included with the sale of each Electrolux oven range means that Electrolux warranted that its oven ranges would be merchantable, fit for the ordinary purposes for which oven ranges are used, pass without objection in the trade, be of fair and average quality, and conform to promises and affirmations of fact made on the container and label.  This implied warranty of merchantability is part of the basis for the benefit of the bargain between Electrolux and Plaintiffs and Class Members.

72.     At the time of delivery, however, Electrolux breached the implied warranty of merchantability because its Class Ranges were defective as alleged above, posed serious safety risks at the time they were sold, would not pass without objection, are not fit for the ordinary purpose of safely cooking in a residential setting, and failed to conform to the standard of performance of like products used in the trade.

73.     Within a reasonable amount of time after the Defects manifested itself to Plaintiffs and Class Members, Electrolux received notice of its breach of implied warranty by virtue of its knowledge of the Defects.  Electrolux knew or, in the exercise of reasonable care, should have known that the ovens posed safety risks and were defective prior to sale of these Class Ranges to Plaintiffs and Class Members.

74.     Any implied warranty limitation cannot be enforced here because it is unconscionable. A substantial disparity in the parties' relative bargaining power existed such that

Plaintiffs and Class Members were unable to derive a substantial benefit from their warranties. A disparity existed because Electrolux was aware that its Class Ranges were inherently defective; Plaintiffs and the Class had no notice or ability to detect the problem; Electrolux knew that Plaintiffs and the Class had no notice or ability to detect the problem; and Electrolux knew that Plaintiffs and the Class Members would bear the cost of correcting any defect. In this case, the disparity was increased by Electrolux's knowledge and failure to disclose that the Defects would substantially limit the oven range's intended use and could cause catastrophic failures.

75. The element of privity, if applicable here, exists because Electrolux had direct written communications with Plaintiffs and Class Members regarding their Class Ranges in the form of warranty forms, manuals, registration cards, communications regarding defect failures, or similar documents. Electrolux advertised the ranges for sale via direct communications with Plaintiffs and Class Members through television, the internet, magazine advertisements, and the like. The dealers who sold the oven ranges to Plaintiffs and Class Members are Electrolux's agents. Electrolux entered into contracts with Plaintiffs and Class Members through warranties, including extended warranties; and Plaintiffs and Class Members are third-party beneficiaries of warranties that ran from Electrolux to their dealer-agents. Further, Electrolux designed and manufactured the Class Ranges intending Plaintiffs and Class Members to be the ultimate users of these oven ranges.

76. As a direct and proximate result of Electrolux's breach of its implied warranties, Plaintiffs and Class Members purchased unsafe products which could not be used for their intended use of cooking in a residential setting, and thus have been damaged. Plaintiffs and Class Members seek damages in an amount to be determined at trial.

# COUNT IV

## INJUNCTIVE AND DECLARATORY RELIEF

### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS)

77.     Plaintiffs re-allege all preceding paragraphs and incorporates them by reference as though fully set forth herein.

78.     There is a controversy between Electrolux and Plaintiffs and the other Class Members concerning the existence of the Defects in the oven ranges.

79.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

80.     Accordingly, Plaintiffs and Class Members seek a declaration that these ranges have a common defect(s) in their design/manufacture.

81.     Additionally, Plaintiffs and Class Members seek a declaration that this common defect poses a serious risk to consumers and the public.

82.     Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold oven ranges which contain material and dangerous defects as described herein.  Based upon information and belief, Electrolux continues to design, manufacture, produce, test, inspect, market, distribute, and sell oven ranges which contain material and potentially dangerous defects as described herein.

83.     Based upon information and belief, Electrolux has taken no corrective action concerning the Defects described herein, has not issued any warnings or notices concerning the dangerous Defects, nor implemented an oven range recall for this set of ranges and for the Defects.  Thus, Plaintiffs and the Class Members face the risk of real injury in that, because the

Defects remains in the oven ranges, the range owners could be injured in purchasing replacement oven ranges with the same electrical malfunction and such defects could cause the same type of damages/injury described herein.

84.     Plaintiffs and the Class have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Electrolux oven range defects described herein. Electrolux should be required to take corrective action to prevent further injuries, including: (a) issuing a nationwide recall of the oven ranges; (b) issuing warnings and/or notices to consumers and the Classes concerning the defects; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective oven ranges described in this Complaint.

<u>**COUNT V**</u>

<u>**STRICT LIABILITY – DESIGN DEFECT**</u>

<u>**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE NATIONAL CLASS AND, ALTERNATIVELY, THE WISCONSIN AND MARYLAND CLASSES)**</u>

85.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

86.     Electrolux is engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting, and/or selling kitchen essentials and appliances and did design, manufacture, distribute, advertise, market, promote and/or sell the Class Ranges herein.

87.     Electrolux's Class Ranges were expected to and did reach Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

88.     The ovens were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control in that, under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that electrical failure would spontaneously occur, often resulting in fire.

89.     Plaintiffs and Class Members used the subject ovens in a manner reasonably intended by Electrolux.

90.     The Class Ranges are defective because they were not safe for ordinary and intended use; Electrolux failed to provide Plaintiffs and Class Members, either directly or indirectly, with adequate and sufficient warning regarding the known or foreseeable risks and dangers inherent in the ovens; the ovens contained material design defects and were not reasonably safe due to such defects; the design, methods of manufacture and testing of the ovens did not conform to generally-recognized and prevailing standards or the state of the art in existence at the time the design was made and when the ovens were manufactured; and at the time the ovens left Electrolux's control, the foreseeable risks associated with the ovens' design exceeded the benefits associate with the design.

91.     Plaintiffs and Class Members have suffered property damage and other incidental and consequential damages as a direct and proximate result of the defective condition.

92.     Electrolux acted with malice, oppression and/or fraud, and in conscious and flagrant disregard to the safety of their consumers by manufacturing and selling ovens known to be defective and unreasonably dangerous.  As alleged, Electrolux knew or should have known that the Defects would cause their ovens to fail, combust, and catch fire—damaging the ovens and other property, and threatening the personal safety of the consumers.  Electrolux knew or was repeatedly informed of the serious defects, yet failed to take any remedial action and instead

28

continued to sell these defective products.  Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

**COUNT VI**

**STRICT LIABILITY – FAILURE TO WARN**

**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE WISCONSIN AND MARYLAND STATE CLASSES)**

93.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

94.     The Class Ranges were designed, manufactured, and sold by Electrolux in the regular course of business and were expected to reach Plaintiffs and Class Members without substantial change in the condition in which they were manufactured, sold, and distributed.

95.     The ovens were in a defective and unreasonably dangerous condition when they left Electrolux's possession or control because under normal conditions, usage and applications, they could not withstand the use for which they were intended, including but not limited to the fact that the electrical failures would spontaneously occur, resulting in fire.

96.     Electrolux had no reason to believe that consumers of its Class Ovens would be aware of the foreseeable harm associated with their use.

97.     Prior to and after selling the ovens to Plaintiffs and Class Members, Electrolux had a legal duty to warn about the Defects in the ovens and the dangers such defects posed.

98.     Prior to and after distributing the Class Ranges to Plaintiffs and Class Members, Electrolux and their agents who sold or serviced the ovens failed to warn Plaintiffs and Class Members of the Defects.

99.     As a direct and proximate result of Electrolux's failure to warn of the defective and unreasonably dangerous condition and design of the Class Ranges, Plaintiffs and Class Members suffered property damage and other incidental and consequential damages.

100.     Electrolux acted with malice, oppression, and/or fraud, and in conscious and flagrant disregard of the safety of their consumers by manufacturing and selling ovens known to them to be defective and unreasonably dangerous. As alleged, Electrolux knew that the Defects would cause their ovens to fail, combust, catch fire, melt, damage the ovens and other property, and could threaten the personal safety of consumers. Electrolux knew of, and was repeatedly informed of this serious Defects, yet failed to take any remedial action and instead continued to sell the defective products. Given Electrolux's conscious disregard for the safety of the public, Plaintiffs and Class Members seek exemplary or punitive damages.

## COUNT VIII

## FRAUDULENT CONCEALMENT

## (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF

## THE WISCONSIN AND MARYLAND CLASSES)

101.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

102.     Electrolux concealed material facts from Plaintiffs, Class Members, and the public generally. Electrolux knew that its ovens contained defects in the electrical systems, but concealed those facts such that consumers had no such knowledge.

103.     Electrolux had a duty to disclose the Defects to Plaintiffs and Class Members, but it failed to do so.

104.    Electrolux also knew that Plaintiffs and Class Members had no knowledge that its Class Ranges were defective and that they did not have an equal opportunity to discover the facts. Electrolux was in a superior position than Plaintiffs and Class Members.

105.    By failing to disclose the material facts concerning its Class Ranges, Electrolux intended to induce Plaintiffs and Class Members into purchasing the those ovens.

106.    Plaintiffs and Class Members would not have purchased their Class Ranges had they known that the ovens have defective electrical systems or Plaintiffs and Class Members would not have paid as much as they did.  Electrolux benefited from the sales of these ovens as a result of its nondisclosure.

107.    When Class Members experienced problems with their ovens and called Electrolux to make warranty claims, Electrolux routinely charged Class Members a fee to inspect the ovens or otherwise determined—without inspection—that it would not cover the cost of repair or replacement.  Alternatively, Electrolux routinely failed to honor its warranties with consumers concerning the Defect because it did not offer consumers who experienced failures with their ovens the necessary repair or replacement costs.

108.    As a direct and proximate result of Electrolux's conduct, Plaintiffs and Class Members have suffered damages.

109.    Electrolux's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard of the rights of Plaintiffs and Class Members such that punitive damages are appropriate.

## COUNT IX

## VIOLATIONS OF THE WISCONSIN DECEPTIVE

## TRADE PRACTICES CT (WIS. STAT § 100.18)

31

**(PLAINTIFFS JOHN AND CAROL REICHARDT INDIVIDUALLY**

**AND ON BEHALF OF THE WISCONSIN CLASS)**

110. Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

111. Plaintiffs John Reichardt and Carol Reichardt (for purposes of this section, "Plaintiffs") bring this action on behalf of themselves and the Wisconsin Class against Electrolux.

112. Plaintiffs and the Wisconsin Class are members of "the public" within the meaning of Wis. Stat. § 100.18(1). Plaintiffs and Wisconsin Class members purchased or leased one or more Class Oven Ranges.

113. Plaintiffs and Wisconsin Class members are "persons" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1)

114. Electrolux is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

115. The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

116. In the course of Electrolux's business, Electrolux intentionally or negligently concealed and suppressed material facts about the Defect in its Class Ranges. For years, Electrolux has relied upon its tag-line of the dependability of its oven ranges as being reliable and efficient. All of Electrolux's actions, as alleged herein, occurred in the course of its business and were a part of pattern or generalized course of conduct.

117. Electrolux thus violated the Wisconsin DTPA, at a minimum by: (1) making direct statements or creating reasonable inferences about the Class Ranges that had the tendency

to mislead consumers; (2) engaging in advertising concerning the "legendary reliability and efficiency" of Electrolux oven ranges; and (3) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, exclusions, or restrictions on Class Ranges.

118.    Electrolux engaged in misleading, false, unfair, or deceptive acts or practices that violated the Wisconsin DTPA by installing defective components in the Class Ranges and failing to disclose same.  They further violated the Wisconsin DTPA by marketing their oven ranges as being of high quality and safety by presenting itself as a reputable manufacturer that stood behind the quality and safety of the Class Ranges.

119.    Electrolux intentionally and knowingly misrepresented material facts regarding the Class Ranges with the intent to mislead Plaintiffs and the Wisconsin Class.

120.    Plaintiffs and the Wisconsin Class suffered ascertainable loss and actual damages as a direct and proximate result of Electrolux's misrepresentations and its concealment of and failure to disclose material information.  Plaintiffs and the Wisconsin Class members who purchased or leased the Class Ranges would not have purchased or leased them at all had the Class Ranges' true nature been disclosed or these consumers would have paid significantly less for the ovens.  Plaintiffs and Wisconsin Class Members also suffered diminished value of their ovens, as well as lost or diminished use.

121.    Electrolux had an ongoing duty to all Electrolux's customers to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of its business.

122.    Electrolux's violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.  Electrolux's negligent and grossly negligent acts and practices complained of herein affect the public interest.

33

123.    Plaintiffs and the Wisconsin Class Members seek damages, court costs, and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2) and any other just and proper relief under the Wisconsin DTPA.

## COUNT X

## VIOLATION OF WISCONSIN'S BREACH OF EXPRESS WARRANTY, WIS. STAT. § § 402.313 AND 411.210

## (PLAINTIFFS JOHN AND CAROL REICHARDT INDIVIDUALLY AND ON BEHALF OF THE WISCONSIN CLASS)

124.    Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

125.    Plaintiffs John and Carol Reichardt (for purposes of this section, "Plaintiffs") bring this Count individually and on behalf of the Wisconsin Class against Electrolux.

126.    Electrolux is and was at all relevant times "merchant" with respect to oven ranges under Wis. Stat. § § 402.104(3) and 411.103(1)(d).

127.    With respect to leases, Electrolux was and is at all relevant times "lessor" of oven ranges under Wis. Stat. § 411.103(1)(p).

128.    The Class Ranges are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

129.    In connection with the purchase or lease of each one of its new ovens, Electrolux provided and provides an express one-year limited warranty covering  "all costs for repairing or placing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions."

34

In addition, for an additional charge, consumers can pay for extended warranties that extend the one-year period of the original limited warranty.

130.     Electrolux's warranties formed a basis of the bargain that was reached when Plaintiffs and other Wisconsin Class Members purchased or leased their Class Ranges with the Defects described herein.

131.     Plaintiffs and other Wisconsin Class Members experienced defects within their warranty periods.  Despite the existence of warranties, Electrolux failed to inform Plaintiffs and Wisconsin Class Members that the Class Ranges were manufactured defectively and with defects that posed potentially deadly consequences and failed to fix the defects or replace the oven free of charge.

132.     Electrolux breached the express and extended warranties by promising to repair and correct manufacturing defects of materials or workmanship of any parts they supplied. Electrolux has not repaired or adjusted the Class Ranges' materials and workmanship defects.

133.     Affording Electrolux a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here as they have already failed to do so within a reasonable time.

134.     Furthermore, the warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Wisconsin Class Members whole, because Electrolux has failed and/or refused to adequately provide the promised remedies within a reasonable time.

135.     Accordingly, recovery by Plaintiffs and Wisconsin Class Members is not restricted to the warranties promising to repair and/or correct manufacturing defects and

Plaintiffs, individually and on behalf of the other Wisconsin Class Members, seek all remedies as allowed by law.

136.    Also, at the time Electrolux warranted and sold or leased the Class Ranges, they knew that the Class Ranges were inherently defective and did not conform to their warranties; furthermore, Electrolux wrongfully and fraudulently concealed material facts regarding the Class Ranges.  Plaintiffs and the other Wisconsin Class Members were therefore induced to purchase or lease the Class Ranges under false and/or fraudulent pretenses.

137.    Moreover, many of the injuries flowing from the Defects cannot be resolved through the limited remedy of "repair or replacement," as many incidental and consequential damages have already been suffered because of Electrolux's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time; and any limitation on Plaintiffs' and other Wisconsin Class Members' remedies would be insufficient to make Plaintiffs and the other Wisconsin Class Members whole.

138.    Finally, because of Electrolux's breach of warranty as set forth herein, Plaintiffs and the other Wisconsin Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other Wisconsin Class Members of the purchase or lease price of all Class Ranges currently owned or leased, and for such other incidental and consequential damages as allowed.

139.    Electrolux was provided notice of these issues by the complaints filed against them by individuals and insurance carriers.

36

140.     As a direct and proximate result of Electrolux's breach of express warranties, Plaintiffs and the other Wisconsin Class Members have been damaged in an amount to be determined at trial.

## COUNT XI

## VIOLATIONS OF WISCONSIN'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, WIS. STAT. §§ 402.314 AND 411.212

## (PLAINTIFFS JOHN AND CAROL REICHARDT INDIVIDUALLY AND ON BEHALF OF THE WISCONSIN CLASS)

141.     Plaintiffs re-allege all preceding paragraphs and incorporate them by reference as though fully set forth herein.

142.     Plaintiffs John Reichardt and Carol Reichardt (for purposes of this section, "Plainitffs") bring this Count on behalf of themselves and the Wisconsin Class against Electrolux.

143.     Electrolux is and was at all relevant times a "merchant" with respect to Class Ranges under Wis. Stat. §§ 402.104(3) and 411.103(1)(t) and "seller" of range ovens under § 402.103(1)(d).

144.     With respect to leases, Electrolux is and was "lessor" of Class Ranges under Wis. Stat. § 411.103(1)(p).

145.     The Class Ranges are and were at all times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

146.     A warranty that the Class Ranges were in merchantable condition and fit for the ordinary purpose for which ovens were used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

147.     These oven ranges, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which ovens are used. Specifically, the Class Ranges are inherently defective in that they have an electrical failure that can cause a fire, regardless of whether the oven is in use. The ovens were not adequately designed, manufactured, or tested.

148.     Electrolux was provided notice of the Defects through individual complaints filed against them by individuals and insurance carriers.

149.     As a direct and proximate result of Electrolux's breach of the implied warranty of merchantability, Plaintiffs and other Wisconsin Class Members have been damaged at an amount to be proven at trial.

## COUNT XII

## VIOLATIONS OF MARYLAND'S CONSUMER PROTECTION ACT,

## MD. CODE COM. LAW §§ 13-101, *ET SEQ.*

## (PLAINTIFF LISA MELBY INDIVIDUALLY AND ON BEHALF OF

## THE MARYLAND CLASS)

150.     Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

151.     Plaintiff Lisa Melby (for the purpose of this section, "Plaintiff") brings this action on behalf of herself and the Maryland Class against Electrolux.

152.     Electrolux, Plaintiff, and the Maryland Class are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

153.     The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer

good. Md. Code Com. Law § 13-3-3. Electrolux participated in misleading, false, or deceptive acts that violated the Maryland CPA.

154. In the course of their business, Electrolux concealed and suppressed material facts concerning the Class Ranges by manufacturing and putting into the stream of commerce oven ranges with serious defects that could result in catching the ovens and surrounding areas on fire.

155. Electrolux violated the Act, by, at a minimum by: (1) making direct statements or causing reasonable inferences about the Class Ranges that had the tendency to mislead consumers; (2) engaging in advertising concerning the "legendary reliability and efficiency" of Electrolux oven ranges; (3) failing to make clear and conspicuous disclosures of limitations, disclaimers, qualifications, conditions, exclusions, or restrictions on Class Ranges; and (4) by presenting itself as a reputable manufacturer that valued safety and efficiency and stood behind its ovens after they were sold.

156. Electrolux's actions as set forth above occurred in the conduct of trade or commerce.

157. Electrolux intentionally and knowingly misrepresented material facts regarding the Class Ranges with intent to mislead Plaintiff and the Maryland Class.

158. Electrolux knew or should have known that its conduct violated the Maryland CPA.

159. Electrolux owed Plaintiff and the Maryland Class a duty to disclose to the public health and safety risks of the Class Ranges because they possessed the exclusive knowledge of the Defects in the ovens that they were manufacturing, selling, and distributing throughout the United States while purposefully withholding material facts from consumers, including Plaintiff and the Maryland Class.

160.     Plaintiff and the Maryland Class suffered ascertainable loss and actual damages as a direct and proximate result of Electrolux's misrepresentations and its concealment of and failure to disclose material information.  Plaintiff and the Maryland Class Members who purchased or leased the Class Ranges would not have purchased or leased them at all and/or—if the oven ranges' true nature had been disclosed and mitigated—would have paid significantly less for them.  Plaintiff and Maryland Class Members also suffered diminished value of their oven ranges, as well as lost or diminished use.

161.     Electrolux had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Maryland CPA.  All owners and lessees of Class Ranges suffered ascertainable loss in the form of the diminished value of their ovens as a result of Electrolux's deceptive and unfair acts and practices made in the course of Electrolux's business.

162.     Electrolux's violations present a continuing risk to Plaintiff, the Maryland Class Members, and the general public.  Defendant Electrolux's acts and practices complained of herein affect the public interest.

163.     As a direct and proximate result of Electrolux's violations of the Maryland CPA, Plaintiff and the Maryland Class have suffered injury-in-fact and/or actual damage.

164.     Pursuant to Md. Code Com. Law § 13-408, Plaintiff and the Maryland Class seek actual damages, attorneys' fees, and any other just and proper relief under the Maryland CPA.

<u>**COUNT XIII**</u>

<u>**VIOLATIONS OF MARYLAND'S BREACH OF IMPLIED WARRANTY OF**</u>

<u>**MERCHANTABILITY, MD. CODE COM. LAW §§ 2-314 AND 2A-212**</u>

<u>**(PLAINTIFF LISA MELBY INDIVIDUALLY AND ON BEHALF OF**</u>

<u>**THE MARYLAND CLASS)**</u>

40

165.    Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

166.    Plaintiff Lisa Melby (for purposes of this section, "Plaintiff") brings this Count on behalf of herself and the Maryland Class against Electrolux.

167.    Electrolux is and was at all relevant times a "merchant" with respect to oven range appliances under Ms. Code Com. Law § 2-104(1) and "seller" of oven range appliances under § 2-103(1)(d).

168.    With respect to leases, Electrolux is and was at all relevant times "lessor" of oven range appliances under Ms. Code Com. Law § 2A-103(1)(p).

169.    The Class Ranges are and were at all relevant times "goods" within the meaning of Ms. Code Com. Law §§ 2-105(1) and 2A-103(1)(h).

170.    A warranty that the Class Ranges were in merchantable condition and fit for the ordinary purpose for which ovens are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

171.    These Class Ranges, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which ovens are used. Specifically, the Class Ranges are inherently defective in that they have an electrical failure that can cause a fire, regardless of whether the oven is in use and were not adequately designed, manufactured, and tested.

172.    Electrolux was provided notice of the Defect through individual complaints filed against them by Plaintiff and others.

41

173.    As a direct and proximate result of Electrolux's breach of the implied warranty of merchantability, Plaintiff and Maryland Class Members have been damaged in an amount to be proven at trial.

**COUNT XIV**

**VIOLATIONS OF MARYLAND'S BREACH OF EXPRESS WARRANTY, MD. CODE COM. LAW §§ 2-313 AND 2A-210**

**(PLAINTIFF LISA MELBY INDIVIDUALLY AND ON BEHALF OF THE MARYLAND CLASS)**

174.    Plaintiff re-alleges all preceding paragraphs and incorporates them by reference as though fully set forth herein.

175.    Plaintiff Lisa Melby (for purposes of this section, "Plaintiff") brings this Count on behalf of herself and the Maryland Class against Electrolux.

176.    Electrolux is and was at all relevant times a "merchant" with respect to oven range appliances under Md. Code Com. Law § 2-104(1) and "seller" of oven range appliances under § 2-103(1)(d).

177.    With respect to oven range leases, Electrolux is and was at all relevant times "lessor" of oven range appliances under Md. Code Com. Law § 2A-103(1)(p).

178.    The Class Ranges are and were at all times "goods" within the meaning of Md. Code Com. Law §§ 2-105(1) and 2A-103(1)(h).

179.    In connection with the purchase or lease of each one of its new ovens, Electrolux provided and provides an express one-year limited warranty covering "all costs for repairing or replacing any parts of this appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided

42

instructions." In addition, for an additional charge, consumers can pay for extended warranties that extend the one-year period of the original limited warranty.

180. Electrolux's warranties formed a basis of the bargain that was reached when Plaintiff and other Maryland Class Members purchased or leased their Class Ranges with the defects described herein.

181. Plaintiff and other Maryland Class Members experienced the Defects within their warranty periods. Despite the existence of warranties, Electrolux failed to inform Plaintiff and Maryland Class Members that the class oven ranges were manufactured defectively and with a defects that posed potentially deadly consequences and failed to fix the defects or replace the oven free of charge.

182. Electrolux breached the express and extended warranties by promising to repair and correct a manufacturing defects of materials or workmanship of any parts they supplied. Electrolux has not repaired or adjusted the class oven ranges' materials and workmanship defects.

183. Affording Electrolux a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here as they have already failed to do so within a reasonable time.

184. Furthermore, the warranties promising to repair and/or correct manufacturing defects fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Maryland Class Members whole, because Electrolux has failed and/or refused to adequately provide the promised remedies within a reasonable time.

185. Accordingly, recovery by Plaintiff and other Maryland Class Members is not restricted to the warranties promising to repair and/or correct a manufacturing defect and

Plaintiff individually and on behalf of the other Maryland Class Members, seek all remedies as allowed by law.

186.     Also, at the time Electrolux warranted and sold or leased the Class Ranges, they knew that the ovens were inherently defective and did not conform to their warranties; further, Electrolux wrongfully and fraudulently concealed material facts regarding the Class Ranges. Plaintiff and the other Maryland Class Members were therefore induced to purchase or lease the Class Ranges under false and/or fraudulent pretenses.

187.     Moreover, many of the injuries flowing from the Class Ranges cannot be resolved through the limited remedy of "repair or replacement," as many incidental and consequential damages have already been suffered because of Electrolux's fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide such limited remedy within a reasonable time; and any limitation on Plaintiff's and other Maryland Class Members' remedies would be insufficient to make Plaintiff and the other Maryland Class Members whole.

188.     Finally, because of Electrolux's breach of warranty as set forth herein, Plaintiff and the other Maryland Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the other Maryland Class Members of the purchase or lease price of all class oven ranges currently owned or leased, and for such other incidental and consequential damages as allowed.

189.     Electrolux was provided notice of these issues by the complaints filed against them by Plaintiff and others.

190.     As a direct and proximate result of Electrolux's breach of express warranties, Plaintiff and the other Maryland Class Members have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

A.   An order certifying the proposed National and Wisconsin and Maryland Classes;

B.   An order awarding Plaintiffs and Class Members their actual damages, punitive damages, and/or any other monetary relief provided by law;

C.   An order awarding Plaintiffs and Class Members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.   An order requiring Electrolux to adequately disclose and repair or replace the defective Class Ranges;

E.   An order (a) issuing a nationwide recall of the oven ranges; (b) issuing warnings and/or notices to consumers and the Class Members concerning the defects; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective oven ranges described in this Complaint.

F.   An order awarding Plaintiffs and Class Members pre-judgment and post-judgment interest as allowed by law;

G.   An order awarding Plaintiffs and Class Members reasonable attorneys' fees and costs of suit, including expert witness fees; and

H.   An order awarding such other and further relief as this Court may deem just and proper.

45

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues so triable under the law.

DATED: February 16, 2017

Respectfully submitted,

*/s/ Erin K. Dickinson*
Charles J. Crueger

**CRUEGER DICKINSON LLC**
Charles J. Crueger, Esq.
Erin K. Dickinson, Esq.
4532 North Oakland Avenue
Milwaukee, WI 53211
Telephone: (414) 210-3868
cjc@cruegerdickinson.com
ekd@cruegerdickinson.com

**SIMMONS HANLY CONROY LLC**
Paul J. Hanly, Jr. *(application for admission forthcoming)*
Mitchell M. Breit *(application for admission forthcoming)*
112 Madison Avenue
New York, New York 10016-7416
Telephone: (212) 784-6400
Facsimile: (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

**GREG COLEMAN LAW PC**
Gregory F. Coleman (*application for admission* forthcoming)
Mark E. Silvey (*application for admission* forthcoming)
Adam A. Edwards (*application for admission* forthcoming)
Lisa A. White (*application for admission* forthcoming)
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

46

Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com
lisa@gregcolemanlaw.com

47