UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOHN REICHARDT, et al.,

        Plaintiffs,

  v.                                  Case No. 17-cv-0219-bhl

ELECTROLUX HOME PRODUCTS INC,

        Defendant.

## ORDER DENYING CLASS CERTIFICATION

      Between 2012 and 2016, Plaintiffs Carol Reichardt, Pam Hart, and Adele Stukas purchased oven ranges manufactured by Defendant Electrolux Home Products, Inc. Between 2016 and 2019, each of those ranges inexplicably caught fire. Once the smoke cleared, Plaintiffs joined to bring this putative class action. They now move to certify three classes and three subclasses of similarly situated consumers whose Electrolux-manufactured ovens also unexpectedly ignited. Electrolux opposes the motion on various grounds, some of which have merit. Accordingly, because the record confirms that Plaintiffs' proposed classes do not satisfy the requirements of Federal Rule of Civil Procedure 23, their motion for class certification will be denied.

### FACTUAL BACKGROUND

      On March 8, 2012, Wisconsin residents John and Carol Reichardt[1] purchased a model FPEF3018KFC oven range equipped with an ES1000 control board. (ECF Nos. 120 at 8; 121-5 at 16, 20.) A control board is the brain of the oven, translating consumer inputs into responsive actions, *i.e.*, telling the oven to preheat at 375 degrees. (ECF No. 120 at 7.) It is typically flame-resistant and insulated. (ECF No. 129 at 12, 19.) But on July 17, 2016, because of an "insulation failure [that] occurred near the relays that control the stovetop heating coils," the Reichardt's oven spontaneously caught fire while not in use. (ECF No. 121-5 at 16.) The fire damaged windows,

---

[1] John Reichardt was initially also a plaintiff in this action but withdrew due to health conditions. (ECF No. 135 at 5 n.2.)

cabinets, walls, small appliances, perishables, and a painting, while the smoke and soot damaged the living room, bathroom, and hallways. (ECF No. 52 ¶29.)

The Reichardts filed a homeowner's insurance claim with Allstate, which paid at least $7,662.81 for repairs and the depreciated value of the oven range. (ECF Nos. 52 ¶34; 129 at 13.) The Allstate policy provided: "When we pay for any loss, an insured person's right to recover from anyone else becomes ours up to the amount we have paid." (ECF No. 130-10 at 35.) Consistent with that policy, Allstate, as the Reichardts' subrogee, filed a claim against Electrolux. (ECF No. 129 at 13.) The claim settled for $16,000, and the parties signed a general release discharging "any and all claims or causes of action . . . in any way arising from any and all losses and damages sustained on or about the 17th day of July, 2016, to the property and/or person of John Reichardt."[2] (ECF No. 130-23 at 2.)

Pam Hart of Ohio purchased her model FEF355AWA oven range around August 2013. (ECF No. 52 ¶48.) It came equipped with an ES300 control board. (ECF No. 120 at 10.) The ES300 featured relay contacts (electromechanical control devices) made of silver alloy. (*Id.*) Certain silver alloys like silver cadmium oxide and silver tin indium are often used as relay contacts because they are not prone to melting or sticking. (ECF No. 121-3 at 11.) But the alloy used in the ES300 did melt. (ECF No. 121-5 at 60.) As a result, around February 2019, while she was baking cupcakes, Hart's oven malfunctioned and caught fire. (ECF No. 52 ¶49.) Thinking fast, she immediately unplugged the appliance and avoided further damage. (*Id.*)

In November 2016, Adele Stukas, who resides in Chicago, Illinois, purchased a model FFGF3047LSJ oven range equipped with an ES100 control board. (ECF Nos. 52 ¶56; 120 at 12.) The ES100 has a safety mechanism that cuts power to the oven's heating element if it detects a sudden, unexplained increase in temperature or cannot determine what the temperature is. (ECF No. 129 at 16.) When this happens, the oven displays an "F10" error code. (*Id.*) In November 2017, Stukas' oven caught fire while preheating. (ECF No. 52 ¶57.) She extinguished the flames with water from her sink. (*Id.*) Thereafter, the oven displayed the "F10" error code and refused to turn on. (ECF No. 129 at 16.)

---

[2] While the release names only John Reichardt, both he and his wife Carol were policyholders. (ECF No. 130-10 at 4.)

Approximately three months later, in February 2018, Stukas filed for bankruptcy and did not list any claims related to Electrolux in her petition. (*Id.* at 17.) She received her discharge on May 30, 2018. (*Id.*)

## LEGAL STANDARD

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). To satisfy Rule 23, the party seeking certification must initially demonstrate, by a preponderance of the evidence, that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4); *see Chi. Tchrs. Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 432-33 (7th Cir. 2015). The movant must then satisfy one of the three requirements found in Rule 23(b). *See Dukes*, 564 U.S. at 345. In this case, Plaintiffs invoke Rule 23(b)(3), which requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

## ANALYSIS

Plaintiffs—who purchased *three* different models of allegedly defective oven ranges in *three* different states—seek to certify *six* classes and subclasses of similarly situated consumers based on a mixture of *eight* unique state and federal claims. They define their proposed classes as follows:

1. ES1000 *National* Class: All consumers who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES1000 control board.

2. ES1000 *Wisconsin* Subclass: All Wisconsin residents who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES1000 control board.

3. ES300 *National* Class: All consumers who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES300 control board.

4. ES300 *Ohio* Subclass: All Ohio residents who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES300 control board.

5. ES100 *National* Class: All consumers who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES100 control board.

6. ES100 *Illinois* Subclass: All Illinois residents who, within the applicable statute of limitations period, purchased an oven range manufactured by Electrolux and installed with an ES100 control board.

(ECF No. 120 at 14-15.) Each class or subclass includes some combination of alleged violations of (1) the Magnuson-Moss Warranty Act, (2) Strict Liability – Design Defect; (3) Strict Liability – Failure to Warn, (4) Express Warranty under Wisconsin Law, (5) Express Warranty under Ohio Law, (6) the Ohio Products Liability Act, (7) Express Warranty under Illinois Law, and (8) the Illinois Consumer Fraud and Deceptive Practices Act. (ECF No. 84 at 1.)

Electrolux argues that none of the nationwide classes are manageable because they require application of different state laws and none of the state subclasses satisfy the elements of Rule 23(a). Plaintiffs contend that North Carolina law will apply to all nationwide classes and all of Rule 23(a)'s requirements are met. The Court agrees with Electrolux on both points.

**I.      None of the Proposed Nationwide Classes are Manageable.**

"No class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). The parties to this suit dispute what legal rules apply to the proposed nationwide class actions. To resolve the dispute, this Court must look to Wisconsin choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Those principles dictate that "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of greater significance." *Wilcox v. Wilcox*, 133 N.W.2d 408, 416 (Wis. 1965).

Under Wisconsin law, how courts measure the significance of nonforum contacts depends on the nature of the suit. For contractual disputes, Wisconsin courts use the "grouping of contacts" test, which mandates consideration of: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See State Farm*

*Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670-71 (Wis. 2002); *Haines v. Mid-Century Ins. Co.*, 177 N.W.2d 328, 330 (Wis. 1970). For tort claims tied to contractual disputes, the factors to consider also include where the injurious conduct and injury occurred. *See NCR Corp. v. Transport Ins. Co.*, 823 N.W.2d 532, 535-36 (Wis. Ct. App. 2012). "If one state's contacts are clearly more significant, the court can terminate analysis after consideration of the above factors." *Doster Lighting, Inc. v. E-Conolight, LLC*, No. 12-C-0023, 2015 WL 3776491, at *12 (E.D. Wis. June 17, 2015).

Inexplicably, despite seeking to certify nationwide classes, Plaintiffs did not address choice-of-law at all in their opening brief. That, in and of itself, is problematic. *See Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 332-33 (S.D. Ill. 2009) ("If a plaintiff fails to present a sufficient choice of law analysis, it fails to meet is burden of proof on Rule 23(b)(3)'s predominance requirement."). They only advanced North Carolina as the appropriate source of law in their reply brief, in response to Electrolux's contention that maintenance of nationwide classes would require the Court to apply the laws of all 50 states. (ECF Nos. 129 at 30-31; 135 at 13-14.) But in their haste to salvage the nationwide classes, Plaintiffs have jeopardized the bulk of their claims. If Plaintiffs are correct that North Carolina has the most significant contacts with the contracts at issue in this case, then the prospect of state subclasses is absurd—Wisconsin's, Ohio's, and Illinois' warranty and tort laws would not apply, only North Carolina's would. But if Plaintiffs are wrong, and the laws of all 50 states apply, then unless they can show that the differences in law are not outcome-determinative, they cannot maintain nationwide classes. In either event, half of the proposed classes or subclasses fall with a single stroke. So which of the two class categories must absorb the self-inflicted fatal blow? The answer is the nationwide classes.

Four of the five grouping of contacts factors are, at best, inconclusive and, at worst, slightly inimical to the application of North Carolina law. Regarding place of contracting, Electrolux sold its oven ranges through a slew of distributors across all 50 states, Washington D.C., and Puerto Rico. (*See* ECF No. 124.) Even if it arguably offered express warranties from its headquarters in North Carolina, the consumers accepted them at the place of purchase, so the factor is evenly split. The same logic applies to the place of contract negotiation. At most, assuming negotiations actually occurred—and Plaintiffs have not established that they did—the factor is split, with Electrolux negotiating from North Carolina and consumers negotiating from their place of

purchase. Similarly, customers performed their contract obligations in their home states, while Electrolux performed its obligations in North Carolina. And the parties' residences are also a split, Electrolux in North Carolina and consumers in their home states.

The dispositive factor is the location of the subject matter of the contract, *i.e.*, the oven ranges. The ovens were located and potentially failed in the various purchasers' home states. "This is the most important of the five contacts . . . [and] weighs heavily in favor of [] applying laws of other states in deciding this case." *Doster Lighting*, 2015 WL 3776491 at *13. The Court, therefore, concludes that the proposed nationwide classes would implicate the warranty laws of all 50 states, Puerto Rico, and the District of Columbia. The same goes for the tort claims because the injuries occurred in the consumers' places of residence. *See Bridgestone*, 288 F.3d at 1017 ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the *consumer* is located, rather than where the seller maintains its headquarters."); *Barden v. Hurd Millwork Co., Inc.*, 249 F.R.D. 316, 320 (E.D. Wis. 2008) ("Each class member more than likely purchased the [offending] product in his or her home state, thus, virtually everything of significance relating to the transaction likely happened there."); *Doster*, 2015 WL 3776491 at *12-14 (holding, under similar circumstances, that Wisconsin choice-of-law rules required the application of the law of other states.)

It now "falls to the plaintiff[s] to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010). Failure to do so dooms the class action on commonality and superiority grounds. *See Bridgestone*, 288 F.3d at 1015. Yet Plaintiffs have not even attempted to demonstrate homogeneity. And it is unlikely they could. Some states, such as Florida, require privity of contract to state a claim for breach of express warranty. *See Shearer v. Thor Motor Coach, Inc.*, 470 F.Supp.3d 874, 884 (N.D. Ind. 2020). Others, like Indiana, impose no such requirement. *Id.* Certain states mandate reliance, while others do not. *See Barden*, 249 F.R.D. at 321. These are important differences, "and such differences have led [the Seventh Circuit] to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes." *Bridgestone*, 288 F.3d at 1015. "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *Id.* at 1018. Plaintiffs, therefore, cannot maintain nationwide class actions against Electrolux.

## II. Plaintiffs Have Not Satisfied the Requirements of Rule 23(a) With Respect to the Proposed State Subclasses.

Plaintiffs' proposed state subclasses have Rule 23 problems of their own. Plaintiffs have not shown that the Wisconsin and Ohio subclasses (consisting of ES1000 and ES300 purchasers in those states) are sufficiently numerous to justify class treatment. And they have likewise failed to show that they are adequate representatives with typical claims for both the Wisconsin and Illinois subclasses (consisting of ES1000 and ES100 purchasers in those states). Accordingly, Plaintiffs cannot prove that any of their three proposed state-based subclasses is appropriate, and their motion to certify them will therefore be denied.

### A. The Wisconsin (ES1000) and Ohio (ES300) Subclasses Do Not Satisfy Numerosity.

Perhaps because Electrolux put up no resistance, Plaintiffs devoted only a cursory couple of paragraphs to the question of numerosity. (ECF No. 120 at 15.) But through neither silence nor stipulation can a defendant relieve the Court of its obligation to "rigorously analyze whether the plaintiff satisfies [Rule 23's] requirements." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018); *see also Bauer v. Kraft Foods Global, Inc.*, 277 F.R.D. 558, 561 (W.D. Wis. 2012) (accepting the parties' stipulation as to the number of proposed class members but proceeding to consider whether that stipulated number satisfied numerosity). Numerosity is Plaintiffs' burden, and even if their adversaries do not hold them to it, the Court must. *See Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015).

Plaintiffs sloppily contend numerosity is established based on the unhelpful general observation that "since 2013, more than 120,000 [ovens containing the ES1000, ES300, and ES100 control boards] have been sold in Wisconsin, more than 400,000 have been sold in Ohio, and nearly 440,000 have been sold in Illinois." (ECF No. 120 at 15.) At face value, these estimates seem compelling; no court would sanction the joinder of 120,000 or 400,000 individuals in a single suit. *See Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (holding that the key numerosity inquiry is the practicability of joinder). But neither approximation withstands scrutiny.

Plaintiffs' estimates merely represent the *maximum possible* number of class members in each state. Those maximums only apply if every oven sold in Wisconsin and Ohio over the relevant time period contained the same control boards as those Reichardt and Hart purchased. But Plaintiffs never even try to establish this. From the data presented, the Court has no way to determine how many of the 120,000 ovens sold in Wisconsin featured the ES1000 of which

Plaintiff Reichardt complains. This matters because Reichardt is not fit to represent consumers who bought ovens equipped with the allegedly defective, but substantially different, ES300 and ES100 controls. Scouring the nearly 4,000 pages of sales data Plaintiffs provide only further confuses the issue. Recall that the Reichardts bought a model FPEP3081KFC oven range. Based on Plaintiffs' estimated class size, one would expect to find thousands of Wisconsin-based sales involving that model on the sales data spreadsheet. Yet the spreadsheet, which goes back as far as 2007, reflects only 485 such transactions.[3] (*See* ECF No. 124.) The number grows exponentially if one includes the sales of other models that *may* have featured the ES1000 control board. But the Court is not free to speculate "as to the size of the putative class." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

That said, if the Court could rely on the 485 putative class members it identified through its own independent analysis, Plaintiffs might still prevail. *See Anderson*, 986 F.3d at 777 (noting that the Seventh Circuit has recognized as numerous classes of as few as 40 members). The problem is that we are not finished whittling the class just yet. As Electrolux's response brief points out, Plaintiffs never distinguish between gas and electric oven ranges. (ECF No. 129 at 13, 15.) Yet, by Plaintiffs' own admission, the ES1000 class definition "should be narrowed to only include consumers who purchased an *electric* oven range manufactured by Electrolux." (ECF No. 135 at 6.) How many of the 485 model FPEP3081KF ovens sold in Wisconsin were electric? Plaintiffs do not say, nor do they offer any method by which the Court might make such a determination. The sales spreadsheet does not mention whether a particular oven runs on gas or electric. And although Plaintiffs, in their reply, agreed to narrow their class definitions based on the gas/electric distinction, ECF No. 135 at 6, they said nothing about how this affected the size of the putative class. This is as good as staking numerosity on a game of roulette. The class size could be as small as one and as large as 120,000. Plaintiffs do not need "to specify the exact number of persons in the class," *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989), but they do need to demonstrate the impracticability of joinder, and they cannot do so with an inscrutable margin of error. *See Chi. Tchrs. Union*, 797 F.3d at 432-33 (Plaintiffs must satisfy Rule 23's requirements "by a preponderance of the evidence.").

---

[3] Actually, Reichardt's specific model, FPEP3081KFC, never appears, but the substantially similar FPEP3081KF does. (ECF No. 124 at 529.) No one has explained why Reichardt's model number has a "C" appended or what this might mean for the purposes of numerosity.

All these headaches (and more) also afflict the ES300 Ohio subclass. Again, Plaintiffs do not explain whether the 400,000 Ohio sales they identify encompass only ovens equipped with ES300 controls; Plaintiff Hart is not an adequate representative for consumers who purchased ranges that do not contain the ES300. Nor do Plaintiffs recalculate the approximate class size after redefining the ES300 subclass to exclude gas oven ranges. (ECF No. 135 at 6.) Worse still, Plaintiffs further narrow the ES300 subclass to exclude even electric ranges equipped with ES300 control boards if those ranges were manufactured after 2003. (*Id.*) The sales data spreadsheet—the sole foundation for Plaintiffs' class size estimate—does not state when a particular model was manufactured. (*See* ECF No. 124.) There is, thus, nothing in the record that identifies anyone besides Plaintiff Hart who meets the proposed class definition. 400,000 is a blind guess. That is insufficient to carry Plaintiffs' burden.

### B. The Wisconsin (ES1000) and Illinois (ES100) Subclasses Do Not Satisfy Typicality/Adequacy.

"In many cases . . ., the requirement of typicality merges with the further requirement that the class representative '"will fairly and adequately protect the interests of the class."'" *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(a)(4))). But whether she is atypical or inadequate, caselaw is clear that "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First Nat'l. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974). In this case, Plaintiffs Reichardt and Stukas face unique defenses, rendering both inappropriate subclass representatives.

Under the terms of its homeowner's insurance policy with Reichardt, Allstate became subrogated to Reichardt's right to recover from Electrolux when she accepted payment for the smoke and fire damage allegedly caused by her defective oven range. (ECF No. 130-10 at 35.) Allstate and Electrolux settled, and Allstate signed a general release, arguably relinquishing the very claims that Reichardt now brings. (ECF No. 130-23 at 2.) This calls Reichardt's typicality and adequacy into question. The Seventh Circuit has approvingly cited *In re Schering-Plough Corporation ERISA Litigation*, 589 F.3d 585 (3d Cir. 2009) where the Third Circuit similarly found a proposed class representative inadequate because "the release that she signed gave rise to a possible defense that was unique to her; indeed, it was possible that she might not have a monetary stake in the outcome at all." *Spano v. The Boeing Co.*, 633 F.3d 574, 584 (7th Cir. 2011). In this case, while Plaintiff Reichardt did not, herself, sign the general release, the same logic

applies.  Reichardt is "subject to a [substantial] defense that would not defeat unnamed class members."  *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).  If that defense succeeds, "she would sink the absent members' claims even though they might have prevailed had the charge been led by a class representative unburdened by [her unique baggage]."  *Al Haj v. Pfizer, Inc.*, 17-C-6730, 2020 WL 1330367, at *3 (N.D. Ill. Mar. 23, 2020).

Reichardt contends that her prosecutorial diligence over the past 70 months eliminates any adequacy concerns.  (ECF No. 135 at 11.)  The concern, however, is not with her commitment to this lawsuit but the comparative weakness of her claims, *see Randall*, 637 F.3d at 824, and the divergent incentives that might entail.  *See Spano*, 633 F.3d at 585.  "A representative plaintiff should not be permitted to impose such a disadvantage on the class."  *Koos*, 496 F.2d at 1165.  Reichardt is therefore an improper representative.

As for Stukas, her 2018 bankruptcy looms large.  "Under [Section] 541 of the Bankruptcy Code, all of a debtor's property, including legal claims, become part of the bankruptcy estate at the time the petition is filed."  *Matthews v. Potter*, 316 F. App'x 518, 521 (7th Cir. 2009).  And if a debtor fails to schedule a claim on her bankruptcy petition, judicial estoppel may prevent her from later raising that claim for her own benefit.  *See Cannon-Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir. 2006).  Instead, the claim "forever remains property of the estate, and the trustee remains the real party in interest."  *Matthews*, 316 F. App'x at 521.

Stukas did not disclose her claim against Electrolux on her bankruptcy petition.  (ECF No. 130-15.)  That claim therefore belongs to her estate (and creditors).  Under virtually identical circumstances, at least one other court in this circuit has held that this means Stukas "cannot be the class representative."  *Franks v. MKM Oil, Inc.*, No. 10-CV-00013, 2012 WL 3903782, at *9 (N.D. Ill. Sept. 7, 2012).  That holding makes sense.  If the named plaintiff lacks standing, then her interests are quite likely to diverge from those of the unnamed class members, and she risks sinking otherwise meritorious claims.  Accordingly, the Court finds that Stukas is not an adequate class representative.

## CONCLUSION

None of Plaintiffs' six proposed classes satisfy the requirements of Fed. R. Civ. P. 23. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Class Certification, ECF No. 119, is **DENIED**.

Dated at Milwaukee, Wisconsin on March 10, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
